UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re: ) Case No. 04-22668
)
STROM Y. GATSON, ) Chapter 13
    Debtor. )
) Judge Arthur I. Harris
)

MEMORANDUM OF OPINION

Before the Court is the debtor's objection to claim (Docket #27) and creditor First Merit Bank's ("First Merit") response (Docket #33). At issue is the sale of a repossessed vehicle which had belonged to the debtor but had been repossessed by First Merit and sold at a public auction in July 2004. The debtor contends that the claim should be reduced because First Merit's sale of the vehicle was not "commercially reasonable" as required by Ohio law. For the reasons that follow, the debtor's objection is overruled, and the claim is allowed in its entirety.

FACTS

The parties stipulated to the following facts (Docket #36):

- Prior to July 6, 2004, the debtor owned a 1998 Buick LeSabre.

- First Merit held a valid security interest against said vehicle.

- On June 14, 2004, First Merit prepared a "NOTICE OF OUR PLAN TO SELL PROPERTY" ("notice of sale"), containing language that First Merit was in possession of debtor's 1998 Buick LeSabre and that the vehicle was to be sold at public sale at 3:00 P.M. on July 6,

2004, at Northern Ohio Towing, 1304 Collier Road, Akron, Ohio 44230.

- The notice of sale was sent to debtor via regular first-class mail, not via certified mail.

- The notice of sale did not state the minimum bid or amount for which collateral may be sold.

- On July 6, 2004, debtor's vehicle was sold for $650.

- On July 19, 2004, First Merit prepared a "NOTICE AND EXPLANATION OF DEFICIENCY" ("notice of deficiency"), disclosing to the debtor an outstanding balance of $13,130.01.

- The notice of deficiency contained the following statement: "In accordance with the Notice of Our Plan to Sell Property previously sent to you, the 1998 BUICK LESABRE/TI# 1805011 was sold on 7/6/04, for $210.00."

- First Merit applied $210 in sale proceeds against the total asserted loan obligation of $13,340.01, leaving a balance of $13,130.01.

- The present case was commenced by the filing of a voluntary petition on October 4, 2004.

- Simultaneous with the filing of the petition, the debtor filed a Schedule F, disclosing an unsecured debt owed to First Merit in the amount of $2,000.

- First Merit filed a proof of claim for an unsecured claim of $13,502.40 on November 19, 2004.

- The debtor filed an objection to First Merit's proof of claim on November 11, 2005.

First Merit filed a response to the objection on December 5, 2005. On

2

December 19, 2005, the Court issued a scheduling order (Docket #34) for the parties to submit stipulations of fact and additional briefs. The joint stipulation (Docket #36) and briefs (Dockets ## 37, 38, & 39) were timely filed, and the Court is now ready to rule.

## JURISDICTION

Allowance or disallowance of a claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## DISCUSSION

Section 502 of the Bankruptcy Code provides in pertinent part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest . . . objects.
> (b) . . . [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that –
>> (1) such claim is unenforceable against the debtor, under any agreement or applicable law . . . .

The applicable law here is Ohio Revised Code §§ 1309.601 *et seq.* Briefly, under Ohio's version of the Uniform Commercial Code, a secured party may repossess and sell collateral when the debtor has defaulted on her obligations under the

3

security agreement. O.R.C. §§ 1309.609-10. If the proceeds of the sale are less than the amount owed on the debt secured by the collateral, the secured party may assert a deficiency claim against the debtor for the outstanding balance. If, however, the secured party failed to comply with any of the provisions of O.R.C. §§ 1309.601-28, the deficiency may be reduced or eliminated. O.R.C. § 1309.626. Once the debtor has placed compliance with O.R.C. §§ 1309.601-28 at issue, as in the present case, the burden is on the secured party to prove compliance. O.R.C. § 1309.626(B).

The debtor has alleged that First Merit failed to comply with O.R.C. § 1309.610(B), which requires that "[e]very aspect of a disposition of collateral ... must be commercially reasonable." Specifically, the debtor argues that First Merit's sale of the vehicle was not commercially reasonable because First Merit did not comply with the Retail Installment Sales Act (RISA) (O.R.C. § 1317.01 *et seq.*) and because the notice of sale was misleading.

Since its enactment, courts have consistently held that RISA does not apply to financing transactions between financial institutions such as First Merit and retail buyers. *See In re Jackson*, 142 B.R. 172, 176 (Bankr. N.D. Ohio 1992) (holding that RISA does not apply to financial institutions engaged in financing the purchase of automobiles by retail buyers); *Butz v. Soc'y Nat'l Bank of the*

4

*Miami Valley*, 83 B.R. 459, 461 (S.D. Ohio 1987) (same); *Vannoy v. Capital Lincoln-Mercury Sales, Inc.*, 88 Ohio App. 3d 138, 143 (1993) (same); *Huntington Bank v. Sabeiha*, 63 Ohio App. 3d 334, 336 (1989) ("[T]ransactions between financial institutions and their customers are exempt from the notice of public sale provisions of [RISA]."); *Mullen v. Fifth Third Bank*, 43 Ohio App. 3d 69, 70 (1988) (installment sales contracts between retail purchasers and banks for cars purchased from a car dealership are not governed by RISA); *Huntington Nat'l Bank v. Elkins*, 43 Ohio App. 3d 64, 66 (1987) ("[W]hen financial institutions make direct loans to retail buyers, they are not bound by the notice provisions of RISA, even when the loan proceeds are channeled directly to the retail seller."); *Huntington Nat'l Bank v. Cole*, 44 Ohio App. 3d 28, 29 (1987) (same). In this case, First Merit loaned the debtor the purchase price of the vehicle so that the debtor could purchase the vehicle from a dealer, "Spitzer Buick." Thus, RISA does not apply to the transaction between the debtor and First Merit, and whether First Merit complied with RISA is irrelevant.

The debtor also argues that First Merit's notice of sale was not commercially reasonable because the notice stated that the debtor needed to pay $2,363.40 in order to redeem the vehicle. The debtor argues that providing this redemption amount is not commercially reasonable because it gives the impression

5

that no one would be able to purchase the vehicle for less than the amount specified and because the amount is more than the debtor was required to tender in order to redeem the vehicle under O.R.C. § 1309.623. Finally, the debtor argues that the notice of sale should have contained the minimum bid that would be accepted at the public sale.

As to the debtor's redemption rights, O.R.C. § 1309.623 provides in pertinent part:

> (A) A debtor . . . may redeem collateral.
> (B) To redeem collateral, a person shall tender:
>    (1) Fulfillment of all obligations secured by the collateral; and
>    (2) The reasonable expenses and attorney's fees described in O.R.C. § 1309.615(A)(1).

The Official Comments to U.C.C. § 9-623 provide:

> To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance. A tender of fulfillment obviously means more than a new promise to perform an existing promise. It requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured.

U.C.C. § 9-623 cmt. 2 (2000). Thus, in order for the debtor to redeem the vehicle, she would have needed to tender payment of at least all past due payments, plus repossession costs and attorneys fees, in this case $1,564.70. If the security agreement required the debtor to make assurances of future payments, then the

6

debtor would have needed to tender $1,564.70, plus some future payments. If the security agreement provided for an acceleration upon default, then the debtor would have needed to tender the full balance on the loan. Finally, if the security agreement were silent, then contract principles would supply the missing terms.

Thus, the debtor's statement that only late payments and expenses and attorneys fees are required to redeem collateral under O.R.C. § 1309.623 is incomplete. The proper amount is determined by the security agreement. Unfortunately, the copy of the security agreement provided to the Court is incomplete. Thus, the Court cannot determine whether $2,363.40, which includes $1,564.70 in past due payments and expenses plus two additional monthly payments, was the appropriate amount necessary for the debtor to redeem the vehicle under O.R.C. § 1309.623. Because First Merit bears the burden of proof in demonstrating compliance with O.R.C. §§ 1309.601-28, the Court will presume that the debtor needed to tender only $1,564.70 in order to redeem the vehicle.

O.R.C. § 1309.614(B) sets forth a form for secured parties to use when notifying debtors of an impending sale of collateral. The use of the form provides "sufficient information" to satisfy the notice requirements of O.R.C. § 1309.613-14. Included in the form is the statement, "You can get the property back at any time before we sell it by paying us the full amount you owe (not just

7

04-22668-aih    Doc 41    FILED 04/21/06    ENTERED 04/25/06 14:23:10    Page 7 of 13

the past due payments), including our expenses." A notification in the form of O.R.C. § 1309.614(B) is sufficient even if additional information appears at the end of the form. O.R.C. § 1309.614(C). The notification is sufficient even if the extra information is erroneous so long as the errors are not misleading "with respect to rights arising under [O.R.C. §§ 1309.601 *et seq.*]." O.R.C. § 1309.614(D). Here, the notice of sale is in the form prescribed by O.R.C. § 1309.614(B). Although not required by O.R.C § 1309.614, First Merit also gave the amount due, $2,363.40, as well as an explanation for how that amount was calculated. Since the Court must presume that only $1,564.70 was required to redeem the vehicle prior to the sale, the notice of sale contained additional, erroneous information. The issue is whether this erroneous information – including two additional payments totaling $798.70 in the "amount due" – was misleading with respect to the debtor's redemption rights.

The debtor does not argue that the larger redemption amount prevented or even discouraged her from redeeming the vehicle. Instead, the debtor argues that the provision of any redemption amount would have made the notice of sale misleading because

> a reasonable consumer in Ms. Gatson's position would have been given the impression that she or any bidder she may bring could not purchase the vehicle for any less than the [in this case $1,564.70] figure that was

8

provided to her on this notice.

In addition, the debtor argues that "had the debtor been informed that her vehicle could have been sold for such a low price, she would have been in a position to bid for her vehicle for less than the amount necessary to redeem her loan." Of course, that is true, except that were the debtor, or an agent of the debtor, to be the highest bidder at the public sale, the sale would have been a "disposition of collateral after default" under O.R.C. § 1309.610, and the debtor would still be liable for any deficiency. The debtor seems to argue that if she had purchased the vehicle at the sale, she would only be liable for future payments under the terms of the promissory note. The disposition of collateral at a public sale, however, would extinguish the security agreement and accelerate the balance due on the note. *See* O.R.C §§ 1309.610, 1309.615, & 1309.617. Only a redemption under O.R.C. § 1309.623 would allow the debtor to continue her pre-default obligations under the terms of the note.

Thus, the debtor's arguments, taken together, imply that, on the one hand, a secured party must include a minimum acceptable bid on the notice of sale; on the other hand, any inclusion of a redemption amount is improper because it would mislead the debtor to think that the redemption amount *is* the minimum bid. Nothing in O.R.C. §§ 1309.601-28, however, requires the secured party to provide

9

a minimum bid. As noted above, a notice in the form provided in O.R.C. § 1309.614(B) is sufficient, and O.R.C. § 1309.614(C) allows a secured party to include extra information, which presumably includes a redemption amount, on the notice. Indeed, O.R.C. § 1309.614(A)(1)(c) requires the secured party to provide the debtor with a phone number from which the debtor can obtain the redemption amount. Thus, neither of the debtor's arguments regarding the redemption amount is supported by O.R.C. § 1309.614. A notice of sale need not include a minimum bid, and the mere inclusion of a redemption amount on the notice of sale is not misleading.

The issue, then, is whether inclusion of an incorrect redemption amount on a notice of sale is misleading "with respect to rights arising under [O.R.C. §§ 1309.601 *et seq.*]." The Court, however, does not need to decide the issue because it would not affect the outcome in this case. O.R.C. § 1309.626 provides in pertinent part:

> (C) . . . if a secured party fails to prove that the . . . disposition . . . was conducted in accordance with sections 1309.601 to 1309.628 of the Revised Code . . . the liability of a debtor . . . for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:
> (1) The proceeds of the . . . disposition . . .; or
> (2) The amount of the proceeds that would have been realized had the noncomplying secured party proceeded in accordance with sections 1309.601 to 1309.628 of the Revised Code . . . .

10

> (D) For purposes of division (C)(2) of this section, the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.

O.R.C. § 1309.626 differs significantly from U.C.C. § 9-626 in that consumer and non-consumer transactions are treated the same under O.R.C. § 1309.626 but may be treated differently under U.C.C. § 9-626. Under Ohio's old Article 9, the failure of a secured party to provide a consumer debtor reasonable notice under old O.R.C. § 1309.47 was an "absolute bar" to recovery of a deficiency. *See Kruse v. Voyager Ins. Co.*, 72 Ohio St. 3d 192 (1995). The Official Comments to U.C.C. § 9-626 indicate that the drafters intended to allow courts to continue to employ various rules for consumer transactions, including the "absolute bar" rule, that they had developed under old Article 9. *See* U.C.C. § 9-626 cmt. 4 (2000). O.R.C. § 1309.626 does not provide for an absolute bar, but only limits debtor's liability for a deficiency to the deficiency that would have resulted had the secured party complied with O.R.C. §§ 1309.601-28. The omission of the exception for consumer transactions, given the text of U.C.C. § 9-626 and the Official Comments, indicates that the General Assembly intended O.R.C. § 1309.626 to supersede the "absolute bar" rule. Thus, the Court must determine whether "[t]he amount of the proceeds that would have been realized" had the secured party

04-22668-aih    Doc 41    FILED 04/21/06    ENTERED 04/25/06 14:23:10    Page 11 of 13

complied with O.R.C. §§ 1309.601-28 is less than the secured obligation.

Here, the record establishes that the amount realized at the public sale would have been unchanged whether the notice of sale contained a correct redemption amount or no redemption amount. The debtor made no tender of any amount. The debtor made no offer to pay any amount. Nor has the debtor alleged that she would have redeemed the vehicle or even that she *could* have redeemed the vehicle for $1,564.70. Without a redemption, the sale would have proceeded as it did and would have realized the same sale price. Thus, the debtor would be liable for the same deficiency regardless of the allegedly misleading redemption amount on the notice of sale.

Finally, the Court notes, that even if the debtor had alleged that she would have redeemed the vehicle had the notice of sale contained the proper redemption amount, it is not clear that a reduction or elimination of the deficiency would be warranted under O.R.C. § 1309.626. Such an allegation implies that, had the secured party complied with O.R.C. §§ 1309.601-28, no sale would have gone forward and no deficiency would have been asserted. But, the debtor would still be obligated to pay the balance of the secured obligation under the terms of the note. O.R.C. § 1309.626 seems to address those cases in which the secured party's non-compliance resulted in a lower price and thus a higher deficiency than would

have resulted had the secured party complied with the relevant provisions. O.R.C. § 1309.626 does not seem to apply to a case in which compliance would have resulted in no sale, since the language of subsections (C) and (D) speaks only of the "amounts of the proceeds." If an incorrect redemption amount interfered with the debtor's redemption rights, it appears that the appropriate recourse, then, would not be to challenge the deficiency under O.R.C. § 1309.626 but to seek damages under O.R.C. § 1309.625 for "any loss caused by failure to comply" with O.R.C. §§ 1309.614 & 1309.623.

The deficiency is enforceable against the debtor under O.R.C. §§ 1309.601-28 in the full amount claimed. Accordingly, the debtor's objection to First Merit's claim is overruled. Pursuant to 11 U.S.C. § 502(b), the claim is allowed in its entirety.

## CONCLUSION

For the foregoing reasons, the debtor's objection to First Merit's claim is overruled. The claim is allowed in its entirety.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge

13